*Burton* for plaintiff.

---

CHANCERY. **Rowland, Smith & Co. *vs* Bull's Executors.**

*Case* 41.                    ERROR TO THE SHELBY CIRCUIT.

*Usury. Commissions. Guaranty. Administration.*

*Oct.* 11.          JUDGE BRECK delivered the opinion of the Court.

Case stated.

THE defendants in error, as executors of Robert Bull, exhibited their bill in Chancery, under the act of 1839, "to regulate the administration and settlement of es-

ROWLAND,
SMITH, & Co.
*vs*
BULL'S EX'RS.

tates," against the creditors of their testator, representing his estate as insolvent.

Rowland, Smith, & Co. the plaintiffs in error, filed their answer, alledging that they were creditors, and setting forth their claims.

The case, having been referred to the Commissioner and he having reported, was heard as to the plaintiffs and a decree pronounced rejecting their claim, for the reversal of which they prosecute this writ or error.

It appears that Robert Bull deceased, being a manufacturer of hemp, in the county of Shelby, made an arrangement with Rowland, Smith, & Co. who were commission merchants in the city of Louisville, to vend his rope and bagging, and also to accept and endorse bills of exchange and notes for him, to enable him to raise money for the purchase of hemp and the prosecution of his business. The proceeds of the manufactured articles were to be applied to the payment of money which might be advanced by the plaintiffs to or for the deceased, and in discharge of any liabilities they might incur for him. Rope and bagging were accordingly forwarded to the plaintiffs and various drafts and notes were accepted and endorsed and paid by them for the deceased, and money advanced; and the questions presented in this case arise upon the settlement of accounts between the parties.

The plaintiffs set up a note upon Robert Bull and others, for $1611 85, dated the 16th April, 1843, and negotiable and payable in Bank in ninety days. In the settlement of accounts between them and Robert Bull, the plaintiffs admit a balance in favor of Bull of about $500, and to that extent that the note was entitled to a credit. The Court below was of opinion that the note had been fully discharged out of the proceeds of Bull's manufactured articles. Whether actually so discharged or not, or whether it was the duty of the plaintiffs to have applied such proceeds to the payment thereof, instead of other claims which they had upon Bull, we do not deem it important, so far as regards the estate of Bull, to decide. If the note were or should have been so discharged, then other claims would have been left unpaid, and upon the adjustment of accounts between the parties, a

balance equal to the amount due upon the note after cre-diting the five hundred and odd dollars, the balance as reported in favor of Bull, would be left in favor of the plaintiffs. Such would be the result provided no change were made in the account exhibited, except to carry the note into it, and charge the same to Bull. We are in-clined to the opinion that the plaintiffs, as regards the estate of Bull, have not improperly kept the note outside of that account, and that whatever is due from his estate, is properly due upon the note. But in intimating this opinion, we do not intend to conclude the other parties to the note, nor to affect, in any way, their liability. We only decide that as to Bull's estate, whatever is due the plaintiffs, is properly due upon the note. It appears that when the note matured, the plaintiffs had no funds in their hands of Bull's for its payment; nor had they when they rendered their account current in 1841. The ac-count was rendered in February, and shows a balance which would be due Bull in April following. Had the note been negotiated in Bank, as the plaintiffs seem to have intimated to Bull, and they had discharged it out of their own funds, as they had at the time no funds of Bull's, the note would still be a valid note in their hands against the obligors. But moreover, it appears that Bull was himself desirous that the note should continue in the hands of the plaintiffs, and that funds of his which might be received by them, should be otherwise appro-priated.

But it is insisted that the plaintiffs have included in their account, charges which are illegal and unjust. The largest item thus complained of, is a bill of exchange drawn by J. C. Bull, & Co. upon and excepted by John Lane, and endorsed by Robert Bull and others, to the plaintiffs. In the account rendered Robert Bull is cre-dited with the proceeds of this bill, when he passed it to the plaintiffs. The bill was protested for non-payment, and we think it satisfactorily appears that due notice thereof was given to Robert Bull. He was, therefore, responsible to the plaintiffs for its payment. The bill belonged to them and they had a right to look for pay-ment to the drawers, and acceptor, and endorser. Their

having made an effort to coerce payment from the acceptor, did not impair their right as against Robert Bull or his executors. The liability of Bull was not alone upon his covenant to the plaintiffs *to pay the bill upon presentation,* if not paid by the acceptor. He was liable without the covenant, and also upon it; no formal presentation of the bill was necessary; when notified of its nonpayment it was his duty to pay it. There is no evidence that the plaintiffs have collected the bill, or that they have received it in any way, except in charging it in their account against Bull or his executors. It seems to us, therefore, that there is no valid objection to this charge in the plaintiffs account. It was entirely consistent with their arrangement with Bull, that they should charge it upon the proceeds of the sale of his rope and bagging.

But there are other items in the account to which objections are raised. The account contains charges of seven and a half per cent. commission for making sales, including a guaranty of the payment of the proceeds, also two and a half per cent. commission for *endorsing* and the same for *accepting,* and a like commission for advancing money. The proof is that such commissions are established by the usage of trade in the city of Louisville, and are such as are invariably charged by commission merchants in that city, where no special agreement is made to the contrary. There is also proof of an express agreement in this case between Bull and the plaintiffs, that such commissions were to be charged. But it is insisted that this agreement and some of the charges are in themselves usurious.

As to the charge of two and a half per cent. commission for *guaranty,* it is objected to upon another ground. It is urged that the guaranty is a mere promise to pay the debt of another, not in writing, and consequently not obligatory, and that a charge or commission for such a promise, would be oppressive and unjust. But although such a promise might not be legally binding, yet it. is not prohibited by the statute, nor is it void. The promise might be performed, and in that event the commission stipulated to be paid for it, certainly ought not to be withheld. In this case it does not appear that the promise or

ROWLAND,
SMITH, & CO.
*vs*
BULL'S EX'RS.

A promise to pay a per centage for guaranty or acceptance, or advancement is not void.

guaranty was not, in all cases complied with.  Besides, there is written evidence of such guaranty or promises, in part, if not in all cases, where the commission has been charged.  An account rendered of the sale, charging the commission for guaranty, and passing the nett proceeds to the credit of Bull, to be paid at the time the purchaser had stipulated to pay, would certainly be written evidence of the *guaranty*, and virtually amounts to an assumption of payment.  The fact that the guaranty was made in due time before the purchaser had paid, would certainly be necessary to justify the charge.  No instance is designated in which that was not the case.  But upon the principle upon which the objection is based, we think it ought not to be sustained.  No objection as to the rate or amount of commission for guaranty is raised, and if it were, as the parties agreed to the rate, it ought not, on that account, to be disturbed.

But as to the charges for endorsing and accepting notes and bills, and advancing money, it is contended that they are usurious.  If intended as a mere cover for usury—as a mere device to evade the statute, they should certainly be so regarded.  The fact that such charges are customary among merchants in Louisville, would not give them validity if obnoxious to that objection.  In regard to the charges for endorsing and accepting, we are not satisfied that they are usurious, although a commission for accepting a bill drawn by Bull in anticipation of the proceeds of his bagging and rope, which had been sold by the plaintiffs, and the payment thereof assumed or guaranteed by them, and which were subject to the payment of such bill, we are of opinion would be oppressive and ought not to be allowed.  The guaranty in such a case, would be equivalent to an undertaking to accept and pay a bill falling due at the time such proceeds should be due.  We are not certain that commissions have been charged in such cases, but if the fact be ascertained, the charges should be rejected.

The commission charged for advancing money in addition to the interest, we think is usurious, and more especially in view of the facts of this case.  It seems to be settled in England, that Bankers may charge a commis-

*—Nor is it a usurious exaction to charge a commission for endorsing, and accepting bills or notes, unless it be in addition to legal interest.*

*A charge of a commission for endorsing a bill, and then a charge for advancing*

sion for accepting and paying bills of exchange, and upon the principle that they are entitled to compensation for trouble and expense in the business. See *Comyn on usury*, 11*th and* 12*th sections*, (5 *Law Library*.) But we find no case where a commission has been allowed or charged for acceptance in the first instance, and a further commission for advancing the money to take up such bill in the second. The acceptance devolves upon the acceptor, more especially the duty to take it up. And where he is paid for accepting, a commission in addition to the interest for advancing money to take it up, would, we have no doubt, be usurious. And we are not satisfied that a commission for advancing money in addition to the interest, would, in any case, be free from usury. It is said in the work referred to, of Comyn, that it seems to be the custom at Liverpool for Bankers to charge a commission for money advanced by them in addition to the interest; but we are not satisfied that such a custom has been sanctioned by judicial decision. But the charges of commission for advancing are more manifestly oppressive in this case, from the consideration, that the plaintiffs had in most instances, charged a previous commission for endorsing or accepting, and that they had been indemnified for their liabilities or advancements by the means of Bull in their hands.

Regarding, therefore, the charges of commission for advancing as oppressive and usurious, there is improperly included in the note for $1611 85, set up by the plaintiffs, a charge of 5 per cent. for which the note should be credited.

Upon the return of the cause, it should again be referred to the Master, that the account of the plaintiffs may be corrected in the particulars and upon the principles indicated.

Wherefore, the decree is reversed, and the cause remanded, for further and appropriate proceedings, consistent with the principles of this opinion.

*Loughborough*, for plaintiffs : *McHenry and Wilson* for defendants.

ROWLAND, SMITH, & Co. *vs* BULL'S EX'RS.

money to meet it, is unwarranted, and especially when the endorser, (a com. merchant,) had the means of indemnity in his hands.